12608

## BANK OF GREENWOOD v. JOHNSON

(147 S. E., 362)

*Messrs. Dean, Cothran & Wyche,* for appellant, 

*Mr. E. M. Blythe,* for respondent, 

March 12, 1929.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action upon a draft drawn by the defendant upon the Champion Fiber Company of Canton, N. C., for $2,230, dated November 2, 1925, payable on demand to the Commercial Bank of Greenwood, S. C., and claimed to have come to the ownership of the Bank of Greenwood by indorsement of the Commercial Bank.

The facts, as developed by the evidence in the case, which are practically undisputed, are as follows:

On November 2, 1925, the defendant drew the draft above described and delivered it to the Commercial Bank. The evidence does not disclose the purpose of the defendant in drawing the draft payable to the Commercial Bank and delivering it to that bank. There is nothing upon the draft to indicate that it was delivered for the purpose of collection; the ordinary method of indicating this fact would have been to draw the draft in favor of himself and indorsing it for collection to the Commercial Bank; all that appears is a draft drawn payable to the Commercial Bank and delivered by the defendant to it; the presumption therefore is that thereby the draft became the absolute property of the Commercial Bank.

On the following day, the 3d, the Commercial Bank indorsed the draft thus: "Pay to the order of any Bank, Banker or Trust Company," and transmitted it to the Bank of Greenwood, an institution doing business in the same city, Greenwood. There was no indication upon the face of the draft. or in the indorsement, that the Commercial Bank had received the draft from the defendant for collection, or that it was being transmitted to the Bank of Greenwood for that purpose. Upon its face the transaction did not indicate a transmission for collection, but the contrary, as a bank would hardly transmit to another bank in the same city an item upon a foreign bank for collection; for the transmitting bank could forward the draft to a collecting bank at the home of the drawee more expeditiously than the other local bank could do.

But accompanying the draft was a letter, printed form, from the cashier of the Commercial Bank to the Bank of Greenwood, containing this statement: "I enclose for collection," a draft on a party at Ridge Spring (not involved in this controversy), and the draft above described.

The evidence tends to show that immediately upon the receipt of the draft by the Bank of Greenwood, *and presum-*

*ably by the direction of the Commercial Bank,* the draft was passed to the credit of the Commercial Bank upon its general deposit account; it was treated as a cash item and was not entered upon the collection ledger, as the cashier of the Bank of Greenwood testified.

On that day, before the deposit of the $2,230 draft, the Commercial Bank had a

| | | |
|---|---:|---:|
| Credit balance on its deposit account with the Bank of Greenwood of .............. | | $ 831.59 |
| It made a further deposit of .... | | 237.94 |
| Which added to the Ridge Spring draft of ..................$ | 30.00 | |
| And the draft in issue ........ | 2,230.00 | |
| | | 2,260.00 |
| Made a total credit of ........ | | $ 3,329.53 |

.. On the same day the Commercial Bank drew upon this balance a check for $2,200 and received therefor from the Bank of Greenwood, New York Exchange for that amount; the check being charged to the general deposit account of the Commercial Bank. The defendant's draft of $2,230 . was then forwarded by the Bank of Greenwood to a correspondent bank in North Carolina for collection; it was presented by that bank to the drawee for payment; payment was refused and the draft was returned to the Bank of Greenwood. In the meantime the Commercial Bank on November 5th closed its doors and is or has been in process of liquidation.

The case came on for trial before his Honor, Judge Bonham, and a jury. The only evidence offered by the plaintiff was the documentary evidence above referred to and the testimony of the Cashier of the Bank of Greenwood.

At the conclusion of the evidence for the plaintiff, the defendant made.a motion for a nonsuit upon the grounds:

"1. That there is no evidence that plaintiff was the *bona fide* purchaser for value or holder in due course of the draft sued on.

"2. There is no evidence that plaintiff ever had title to the draft sued on.

"3. There is no evidence of any indebtedness by defendant to plaintiff or of any contractual relation existing between them.

"4. No other inference can be drawn from the testimony than that the draft set forth in the complaint was forwarded by Commercial Bank to plaintiff for collection only; plaintiff was thereby notified that the funds represented thereby and the draft itself belonged to defendant; plaintiff never acquired title to the draft, had no right to charge the same to the Commercial Bank, and has therefore no cause of action against the defendant."

His Honor made the following ruling:

"It is held in South Carolina that the possession of a negotiable instrument is *prima facie* evidence of the ownership of it, but it seems to me if one receiving an instrument coupled with instructions and information that it was sent solely for collection may treat it as a cash item the very intent and purposes of the act is defeated.

"I think when the Bank of Greenwood received that paper and noted it was for collection, no title passed to the Bank of Greenwood, and if because of any association or business they had with the Commercial Bank that chose to treat that paper as a cash item and credited it back with it, they exceeded their power under the law.

"I don't think the Bank of Greenwood has any title to that paper or has any right to maintain this action, and the motion for nonsuit is sustained."

From the judgment of nonsuit the plaintiff has appealed upon exceptions which fairly present the matters hereinafter discussed.

Counsel for the respondent advances the general proposition, *as conclusive of the issue involved,* that where a bank receives an item for collection, it is charged with notice of the special purpose indicated, and that the title to the paper does not pass to the bank, indorsee for that purpose.

As to that proposition, the authorities are absolutely in accord: *First Nat. Bank v. Strauss,* 66 Miss., 479, 6 So., 232, 14 Am. St. Rep:, 579; 3 R. C. L., 973, 586; *Fourth Nat. Bank v. Bragg,* 127 Va., 47, 102 S. E., 649, 11 A. L. R., 1034; Note 42 A. L. R., 494; *Evansville Bank v. German-American Bank,* 155 U. S., 556, 15 S. Ct., 221, 39 L. Ed., 259; *Citizens' Bank v. Bradley,* 136 S. C., 511, 134 S. E., 510.

As to the further contention that that proposition is conclusive of the issue involved, such is by no means clear, for it involves the assumption that the draft in this case was so received, based upon the fact that the letter of transmittal referred to the draft as an item transmitted "for collection."

Under ordinary circumstances, a letter of transmittal, advising that the item was being enclosed "for collection," would be sufficient notice, to the bank to which it was forwarded, of such special purpose, notwithstanding the fact that an apparently open, unrestricted indorsement appeared upon the draft. But there is in this case evidence tending to establish circumstances from which the jury may have rightfully inferred that neither the Commercial Bank nor the Bank of Greenwood were at all controlled by the letter of transmittal. It is a significant fact, alluded to above, that the Commercial Bank, doing business in Greenwood, should transmit to the Bank of Greenwood, just across the street, an item for collection upon a party in North Carolina, necessitating the forwarding by the Bank of Greenwood to a correspondent in North Carolina, which it could more expeditiously have done itself, indicating that the Commercial Bank was eager for as quick a realization

upon the draft as it could possibly obtain and which it did immediately obtain. As the draft was at once passed to the credit of the deposit account of the Commercial Bank, it must be assumed that that was done by a deposit slip made out by the Commercial Bank, followed the same day by a check of the Commercial Bank upon its general deposit account of $2,200, which it could not have had honored had not the Bank of Greenwood entered the deposit as stated.

Another circumstance tending to show that the draft was not simply a collection item is that the Bank of Greenwood did not, so far as the evidence shows, charge back the dishonored draft to the account of the Commercial Bank, as naturally would have been done if it had been received simply as a collection item.

In *Fayette Nat. Bank v. Summers* [105 Va., 689, 54 S. E., 862] 7 L. R. A. (N. S.), 694, it was held, quoting syllabus: "Whether or not a bank receiving and crediting to a depositor a check on another bank is entitled to enforce it as owner depends upon its having been the intention of the parties that the deposit shall be treated as cash, which fact is to be determined by the jury." See numerous cases in the note holding that *prima facie,* under these conditions, the title passes to the bank, subject however to proof of the intention otherwise, which makes a jury issue.

In *Holloway v. Dykes* (D. C.), 29 F. (2d), 430, decided December 13, 1928, the Court said: "Where the depositor has ordinarily received credit in the amount of checks, drafts, or other negotiable paper with the privilege of checking against it. it may be implied from the circumstance it was the intention that title to such negotiable paper passed to the bank. However, the question of intention must be determined from the evidence introduced on the trial."

As between the two banks there certainly was sufficient evidence to submit to the jury upon the issue of the passing of the title to the draft from the one bank to the other.

Counsel for the respondent say in the brief: *"Plaintiff*

*sues and must recover, if at all, upon the theory that it is a holder in due course of the draft in question."*

We think that there was sufficient evidence upon this issue to require a submission of it to the jury. But if not, there was certainly enough to require the submission of the issue of *title* to the jury. The fact that the plaintiff may not have been a holder in due course, *if it has the legal title to the draft,* does not conclude its rights. That would impose upon the defendant the burden of showing that he had a valid defense as against the Commercial Bank which would avail him in an action by the Bank of Greenwood against him. This cannot be assumed in the absence of all evidence upon the issue. It might develop, we do not know, that the defendant owed the Commercial Bank and delivered the draft, *payable to it and not marked "for collection,"* as a payment on account. Under these circumstances he could not be heard as against the Commercial Bank to claim a defense against the draft. *It cannot be assumed* that he had a valid defense even if the Bank of Greenwood was not a holder in due course.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.